**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**HCB FINANCIAL CORP.**                                                                 **PLAINTIFF**

**V.**                                                                **CIVIL ACTION NO. 1:10CV559-HSO-JCG**

**LEE F. KENNEDY**                                                         **DEFENDANT**

**MEMORANDUM IN SUPPORT OF KENNEDY'S RESPONSE IN
OPPOSITION TO HCB'S MOTION FOR ATTORNEY FEES AND COSTS**

COMES NOW, Lee F. Kennedy n/k/a Lee McPherson ("Kennedy"), by and through counsel and files this Memorandum in Support of her Response to HCB Financial Corp.'s ("HCB") Motion for Attorney Fees and Costs [ECF #449], and would show unto the Court as follows:

**SUMMARY OF ARGUMENT**

HCB is not entitled to any additional post-judgment attorney fees and costs. This Court has already considered the costs of collection when it rendered the Final Amended Judgment on July 11, 2013, and Mississippi law does not permit a party to request additional fees six years after the judgment.

Furthermore, as is evidenced by the $2,036,293.60 now on deposit with this Court, HCB did not intend to actually collect the judgment. Instead, HCB has used "collection" and "enforcement" litigation as leverage against Kennedy for matters unrelated to the note and guaranty upon which the judgment was granted. HCB now asks this Court to grant it an additional $1,015,016.62 in attorney fees and costs, without sufficient evidence for this Court to assess whether the work was reasonable or necessary or if the fees were actually incurred. What is clear from the record is that the majority of these fees and costs relate to discovering the assets of third parties, not the judgment debtor.

1

For these reasons, Kennedy respectfully requests that this Court deny HCB's Motion for Attorney Fees and Costs in toto. Alternatively, HCB should be required to produce the fee agreement and itemized billing statements, and allow Kennedy an additional 14 days after production to file a supplemental response.

## BACKGROUND

The underlying note and guaranty became a part of HCB's debt portfolio through a series of assignments that involved numerous parties, including the FDIC, and was bundled with a number of other unrelated debts. [ECF #93]. The present action was initially filed by Central Progressive Bank, a now defunct financial institution. [ECF #1]. Once HCB acquired this action, it settled with Kennedy's codefendants for a mere $25,000. [ECF #140 at 5]. Soon after, summary judgment was granted to HCB against Kennedy, in her individual capacity, and the amount of the judgment was set at $2,019,495.82. [ECF #140, #148].

HCB now argues that it is entitled to an additional $1,015,016.62, for post-judgment collection efforts. If granted, the total fee awarded would be $1,102,980.26, representing 68% of the principal indebtedness ($1,625,211.66). HCB does not claim that it has actually paid this amount, and it is not at all clear that these legal bills have actually been incurred. HCB has not provided itemized billing statements and has only provided total hours and average hourly rates for an army of 25 lawyers and 12 paralegals. The legal fees summaries contain no time entries or descriptions of work for the subpoenas, motions to intervene, separate lawsuits, and charging orders filed across the nation (and in at least one case internationally).

The omissions in HCB's Motion and Exhibits raise serious questions about whether it seeks more than it is entitled to, and whether the attorney fees and expenses associated with 37 different timekeepers are reasonable and necessary. For example, notably absent from the Motion is any

mention of HCB's 338-page RICO Complaint filed in the Western District of Texas, Austin Division on Christmas Eve, December 24, 2018.  Yet, certain travel and other expense entries coincidentally reveal activity in Austin at the time the RICO case was filed.

When in early 2019 Kennedy attempted to deposit the judgment amount with this Court, HCB thought it strategically advantageous to actually oppose the effort.  At the same time it opposed Kennedy's effort to satisfy the judgment, HCB was in active contact with defendants adverse to Kennedy-related entities in a completely separate proceeding in California.  When the defendants agreed to pay the Kennedy-related entities as part of a resolution, HCB intervened in the case in an effort to secure the settlement funds owed.  As explained more fully below, HCB's representations to the California court as recently as March 25, 2019, have not aligned with its representations to this Court or this Court's jurisdiction over HCB's post-judgment fee, cost, and interest request.  Its lawyers should not be paid for HCB's attempt to shop its fees to different courts, and otherwise engage in a nationwide assault on Kennedy's character.

## DISCUSSION

**I.  HCB IS NOT ENTITLED TO ADDITIONAL POST-JUDGMENT ATTORNEY FEES OR COSTS.**

HCB is correct that whether a party is entitled to attorney fees is governed by state law, but it cites no Mississippi authority to support its seeking additional post-judgment attorney fees and costs six years after entry of the judgment.  HCB cites *Fulton v. Miss. Farm Bureau Cas. Ins. Co.*, 105 So. 3d 284, 288 (Miss. 2012), for the proposition that "reassessment of attorneys' fees lie outside Rule 59(e)."  [ECF #450 at 24].  Yet, this statement does not give a party an indefinite time within which to request post-judgment attorney fees.  In fact, *Fulton* relies on *Bruce v. Bruce*, 587 So. 2d 898, 903 (Miss. 1991), which discussed the alternative procedural vehicle – Rule 60(b).  The *Bruce* opinion noted that

> [W]hen considering such a motion, the trial court proceeds under Rule 60(b)'s mandate that finality considerations be balanced against any equities movant may assert. Finality of judgments as a policy reason for denial is not nearly so strong when the motion is under Rule 59(e) as when Rule 60(b) is invoked. Put otherwise the trial court has considerably broader discretionary authority under Rule 59(e) to grant relief than it does under Rule 60(b).

*Bruce*, 587 So. 2d at 904. Rule 60 provides that the motion for relief from a judgment be made either within a reasonable time for reasons (4) through (6), but within six months for reasons (1) through (3). MRCP 60(b).

In HCB's Motion to Amend the Judgment filed in 2013, HCB described its attorney fees as newly discovered evidence under Rule 59. Applying HCB's logic, at least the first six months of HCB's claimed attorney fees and recoverable costs which would have been incurred by HCB after entry of the final judgment would be time barred. MRCP 60(b)(2). Any remaining attorney fees HCB seeks to now recover are likewise barred for failure to seek relief by way of motion within a "reasonable time." *Id.* Waiting approximately six years to ask the Court to amend the judgment to award additional attorney fees and costs is unreasonable, and HCB's delay is further prejudicial to Kennedy in that it deprived her of any realistic possibility of knowing what HCB considered to be the payoff for the judgment, a fact that HCB would never disclose to Kennedy. Furthermore, as the *Bruce* case asserts, under Mississippi law, a court's discretion under Rule 60(b) is much more limited than under Rule 59(e) to grant relief.

Otherwise, HCB is not entitled to any additional attorney fees because the note and guaranty upon which HCB sued Kennedy no longer exist. "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement 2d of Judgments, § 24 (1982). "When a valid and final personal judgment

is rendered in favor of the plaintiff: (1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment." Restatement 2d of Judgments, § 18 (2nd 1982). As such, any right to recover attorney fees under the guaranty upon which HCB prevailed against Kennedy, were merged into the final judgment, as amended, and extinguished.

The judgment entered against Kennedy, as amended for the allowance of HCB's stated reasonable attorney fees, was a final judgment and notably not a continuing judgment. HCB's motion essentially asks the Court to treat the judgment as a continuing judgment for the singular purpose of trying to persuade the Court to allow it to repeatedly, and without end, amend the judgment to award additional attorney fees. If HCB's argument and position is accepted, then there would never be any finality to the judgment awarded against Kennedy.

On the contrary, this Court has already considered the amount of attorney fees to which HCB may be entitled for any post-judgment collection efforts. In its Memorandum in Support of its Motion to Alter or Amend the Final Judgment, HCB argued that a $87,963.64 award for fees and costs was justified in part because, "this case is somewhat undesirable because of the fact that a judgment is by no means the end of the collection effort on this matter. HCB has taken a necessary but substantial risk by paying an hourly rate for collection on this matter *due to the possibility that such judgment will never be collected*." [ECF #141] (emphasis added).[1] As such, HCB's motion should be denied, because HCB already represented to the Court that it agreed to pay an hourly rate prejudgment with a professed "calculated risk" that the judgment may never be

---

[1] HCB further argued to the Fifth Circuit that the "Final Judgment was properly amended to include a dollar amount which includes these terms." See Corrected Appellee Brief, pg. 23. The terms HCB referenced were the attorney fees it was seeking in the complaint. Hence, HCB was satisfied that the amount awarded in attorney fees represented the amount of fees it was entitled to recover, and this is particularly true when viewed from HCB's statement of its calculated post-judgment risk of never collecting.

5

collected.  HCB understood that it would likely have to incur additional attorney fees to collect on the judgment and that those attorney fees would not be recoverable. The Court took this argument and representation into consideration in granting HCB's motion and subsequent amendment of the judgment in 2013 to award the $87,305.52 in attorney fees.

HCB now wants to reallocate the post-judgment risk of HCB's attorney fees to Kennedy, but this is no basis for the Court to grant the relief requested.  HCB has available to it $2,036,293.60 in the Court's registry to pay the judgment, which not only includes the previously described attorney fees, but also $331,320.52 in prejudgment interest, all for a Note that it paid less than 100 cents on the dollar for in a purchase of various debts, which included the Mississippi Investors debt, from the FDIC.   Enough is enough.

## II.     HCB HAS FAILED TO DEMONSTRATE THE CLAIMED ATTORNEY FEES ARE REASONABLE AND NECESSARY.

Mississippi Rule of Professional Conduct 1.5 requires that the fee be "reasonable."   Rule 1.5(a) includes a number of factors to consider when determining reasonableness:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

The "lodestar" is "the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." *Tupelo Redevelopment Agency v. Gray Corp., Inc.*, 972 So. 2d 495, 522 (Miss. 2007).

### A. *HCB has failed to submit sufficient evidence for this Court to accurately assess whether its claimed attorney fees are reasonable and necessary.*

It is impossible for this Court (or Kennedy) to determine whether the $975,636.41 in fees claimed by HCB was reasonably and necessarily incurred as part of HCB's post-judgment collection efforts based on the evidentiary record before the Court. Under Mississippi law, although the amount of attorney fees is left to the discretion of the trial court, the award must be supported by sufficient evidence. *See, e.g., Powell v. Powell*, 644 So. 2d 269, 276 (Miss. 1994). As the Mississippi Court of Appeals noted in *Speights v. Speights*, "where there are many billable hours that the court is unable to observe or lacks knowledge of"—which is clearly the case here—"it is *incumbent* upon the party requesting fees to place before the court evidence as to the reasonableness of the amount of the award, so the record as a whole can support the award of attorney's fees." 126 So. 3d 76, 82 (Miss. Ct. App. 2013) (emphasis added). Here, it was incumbent upon HCB to present sufficient evidence for the Court to calculate a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. But HCB's Motion fails to include pertinent evidence for the Court to make this calculation.

The ability for the Court to review HCB's time records is particularly important here, where HCB's attorneys have billed significant time in collateral proceedings—such as the Austin RICO case and the California intervention case—that should not be included in this Court's fee award for HCB's post-judgment collection efforts. Additionally, a review of HCB's cost records in Exhibit 5 to HCB's Motion (which, unlike its attorney fee request, does include the specific dates

7

each cost was incurred) reflects that HCB was engaged in post-judgment collection efforts *after* Kennedy sought leave of court to deposit the funds under the Amended Final Judgment (on January 25, 2019) and *after* this Court ordered HCB to file its motion for the award of post-judgment fees and costs (on February 13, 2019).  These after-the-fact costs were not reasonably and necessarily incurred by HCB as part of its post-judgment collection efforts and should be excluded.  Likewise, HCB's expenditure of attorney fees related to these after-the-fact costs should be excluded.  But based on the current record, which is devoid of any time records whatsoever, there is no way for the Court (or Kennedy) to determine whether HCB has appropriately excluded attorney and paralegal time associated with HCB's unnecessary collection efforts, including these after-the-fact costs or the pursuit of collateral litigation.  *Cf. Von Clark v. Butler*, 916 F.2d 255, 259-60 (5th Cir. 1990) (holding summaries of time sheets were inadequate to meet plaintiff's burden of proof because there was no way for the court to distinguish the hours spent on the plaintiff's prevailing claim).

Second, in order to appropriately calculate the "lodestar" fee the Court must have an hourly rate to factor into the equation.  But for two of HCB's law firms, Adams & Reese (which claims to have billed 1,811.7 hours) and Hutchinson, Black and Cook, HCB's Motion only presents "average" hourly rates for their attorneys and paralegals.  The presentation of "average" hourly rates—as opposed to the *actual* hourly rates billed—can be misleading because it means an attorney might charge, at certain times, a lower, reasonable rate in this district, but at other times, a higher rate that would only be allowed in extraordinary circumstances.  Based on HCB's fee application, it is impossible to determine for almost half of its timekeepers their actual hourly rates, absent a calculation on each, individual time entry.  *See Gautreau v. A.O. Smith Corp.*, No. 98-1187, 2001 U.S. Dist. LEXIS 26128, at *6-8 n.8 (W.D. La. May 24, 2001) ("the presentation of

'average' hourly rates is not objectionable *so long as the actual hourly rates billed by any given attorney are presented for each particular task*") (emphasis added); *accord Roberts v. Holloway (In re Holloway)*, 247 B.R. 197, 201-02 (Bankr. E.D. Tex. 2000) (holding that average hourly rates are "patently misleading").

Finally, it is unclear from HCB's Motion whether any of the law firms involved are working on a contingency fee basis or some other, hybrid fee arrangement. HCB's lawyers claim that HCB is responsible for the fees but does not identify whether it has been billed for or has paid the fees. Whether each of HCB's law firms are on a traditional hourly engagement is not clear. HCB should be required to disclose its fee arrangements with its various counsel. *See* Miss. R. Prof'l Cond. 1.5(a) ("whether the fee is fixed or contingent" is a factor that should be considered by the court when determining whether the fee is reasonable).

In sum, because HCB's fee application fails to include adequate time records or the hourly rates for almost half of its timekeepers, HCB has failed to provide this Court with sufficient evidence to determine the appropriate "lodestar" fee or whether these fees were actually incurred.

### B.    *HCB's approach has been to frustrate the process of resolution rather than hasten it, and any fee application should be reduced accordingly.*

Kennedy's position is that HCB has actively attempted to frustrate the resolution of this matter, and HCB's legal fee/cost application should be viewed in that light. Through her attorneys, Kennedy made different requests from at least January 14, 2019 to January 29, 2019 seeking what HCB claimed to be a full payoff amount, including attorney fees, costs and interest, for the judgment before this Court. *See* Ex. A. HCB, whose agenda was not as clear at the time as it is now, did not provide the full payoff amount. When, after weeks of silence, Kennedy submitted her Motion to place the judgment amount into the registry of this Court, HCB resisted it. Kennedy asserts that there is a strategy behind HCB's effort to avoid telling her exactly what

9

amount HCB claims is outstanding under the Amended Final Judgment, and if correct, the attorney fees HCB incurred to pursue this "hide the ball" strategy should not be awarded to HCB.

For many years HCB has failed to prosecute a pending matter in Louisiana state court involving these same parties. That matter focuses on the value of certain real estate for which Kennedy signed a guaranty. There is serious dispute over the value of the property in question. If it is valued as Kennedy's appraiser calculates, then there is little or no liability associated with her guaranty in that matter. There are several million dollars at issue that depend on that court's determination of value. Instead of allowing the languishing Louisiana proceeding, filed in June 2008, to proceed with discovery and expert testimony on the valuation subject, HCB appears to believe that it could fare better by tying up Kennedy in coast-to-coast legal proceedings. To that end, HCB has initiated and sustained multiple legal proceedings in various forums and issued subpoenas to many of Kennedy's friends and business associates, in order to gain leverage over Kennedy in the Louisiana suit. HCB's legal fees and costs associated with this strategy—which was not reasonably or necessarily pursued to collect on the *Mississippi judgment*—should not be awarded. However, based on the current evidentiary record before the Court, neither the Court nor Kennedy can adequately determine what HCB's lawyers have done, what work was undertaken when, and for what purpose. Without this information it is impossible to segregate the fees incurred by HCB for legal strategies pursued to strengthen its position in other, collateral proceedings against Kennedy, such as the Louisiana litigation.

### *C. Fees and costs associated with the California case should not be awarded to HCB.*

HCB's Motion asks this Court to award it attorney fees and costs, "plus interest to accrue from and at the rate allowed by law." Concurrently, in HCB's California intervention, HCB asks for an award of interest on the same Amended Final Judgment, but at a *higher* rate. The California

court has no role in determining fees, costs, or interest associated with this Court's judgment. And, to the extent HCB is using the California intervention as a means to obtain a conflicting, higher interest award from the California court, attorney fees and costs associated with this backdoor strategy should not be awarded.

HCB's representations to the California court do not align with its representations to this Court and are clearly intended to exaggerate the amount potentially owed by Kennedy in the California proceeding—particularly the amount of post-judgment interest on the Amended Final Judgment.[2]  While HCB mentions nothing about the specific applicable interest rate in its Motion to this Court, it has made multiple representations to the California court as part of its intervention there in an effort to inflate its post-judgment interest beyond the federal statute that governs this judgment.  First, HCB actually suggested to the California court on March 5, 2019 that California's state law 10% statutory interest rate may apply.  *See* Ex. B.  More recently, on March 25, 2019 (after HCB filed this Motion), HCB told the same court that "as of February 19, 2019, the balance due in connection with the Amended Final Judgment was $4,035,852.23," including $1,001,339.79 in post-judgment interest at the "contract rate"[3]:

| | |
|---|---|
| Judgment Amount: | $2,019,495.82 |
| *Post-Judgment interest at contract rate through date of deposit:* | *$1,001,339.79* |
| Post Judgment attorney fees: | $975,636.41 |
| Total: | $4,035,852.23 |

---

[2] For instance, HCB submitted to the California court a declaration from Joe Dobson, HCB's President, stating that "as of February 19, 2019, the balance due in connection with the Amended Final Judgment (in this Court) was $3,920,836.61."  Ex. C.  A declaration filed by Dobson earlier in support of HCB's Motion for Preliminary Injunction and Permanent Injunction in the California court stated: "As of February 6, 2019, the current balance due in connection with the Amended Final Judgment is $3,911,654.23, including post-judgment interest, attorneys' fees and expenses."  Ex. D.  In HCB's Opposition to the Motion for Reconsideration in the California court, HCB claimed "The Mississippi Federal Court Order allows HCB to file a motion on or before March 15th for interest, attorneys' fees and costs that totals more than 1.9 million dollars."  Ex. B.  Despite the math discrepancies, HCB has appeared to represent things to the California court based on premature conclusions.

[3] The contract interest rate has nothing to do with the post-judgment interest rate dictated by statute.

*See* Ex. C (emphasis added). But there is nothing in this Court's Amended Final Judgment or in its order requesting briefing on HCB's post-judgment attorney fees and costs to support HCB's claim to $1,001,339.79 in post-judgment interest at the contract rate.

What appears to encourage HCB is the idea that it may get more from the California court in interest than what is allowed by statute in this proceeding. Based on HCB's representations to the California court, that court issued an Order stating:

> The acknowledgment that the $16,796.78 paid on February 15, 2019, over and above the amount of the judgment which was entered against Kennedy five years and seven months earlier on July 11, 2013, does not cover all of the interest due on the judgment, and is an acknowledgment that HCB's interest in this litigation was not removed by the payment. The statement that all that remains is a *de minimis* amount of interest is naïve at best, and deceptive at worst, given the amount of legal interest which would have accrued on the $2,019,495.82 judgment over the years-long period of time during which Kennedy refused to pay any portion of it. It appears to the Court that, as pointed out by HCB in its opposition to the motion for reconsideration, the only reason Kennedy made any attempt to pay any amount of the judgment was because HCB had been permitted to intervene in this action. The amount paid, however, appears to be significantly less than that which is truly due and owing to HCB at this time.

Ex. E. While perhaps music to HCB's ears, this conclusion is simply wrong. It is well-settled law that federal, not state, law governs the calculation and award of post-judgment interest in federal cases, including diversity cases otherwise governed by state law. *See Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010); *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 435 (5th Cir. 2003). HCB cannot double dip by securing interest from this Court and then attempting to persuade the California court to make up the difference under the "10% per annum" or any other theory. This is true in the Fifth Circuit as well as the Ninth Circuit, where litigants have tried the very same thing to no avail:

> Allstate contends that to the extent that Plaintiffs are attempting to argue that they are entitled to the 10% state court interest rate plus the federal post-judgment interest rate under Section 1961, the argument fails because the interest prescribed by Section 1961 is mandatory. The California Constitution sets post-judgment

interest at 10%, which is not the rate set by the federal statute.

*Madrigal v. Allstate Ins. Co.,* No. CV 14-4242 SS, 2016 U.S. Dist. LEXIS 186906, at *16 (C.D. Cal. May 19, 2016); *see also U.S. v. Rose*, 970 F. Supp. 616, 618 (E.D. Mich. 1997) ("Once a claim is reduced to a judgment, the original claim is extinguished, and a new claim, called a judgment debt, arises. Section 1961(a) governs the interest rate on this judgment debt. A single rule should govern interest on any such [judgment] debt, the nature of the original claim having become irrelevant."); *accord Jack Henry & Assoc's, Inc. v. BSC, Inc.*, 753 F. Supp. 2d 665, 670 (E.D. Ky. 2010); *In re George*, 318 B.R. 729, 734 (B.A.P. 9th Cir. 2004) ("The General Rule of Merger contemplates that a judgment in favor of a plaintiff extinguishes the entire claim, which merges into the judgment. Future actions may be maintained 'on the judgment.'") (quoting *Cal. v. Taxel*, 98 F.3d 1147, 1150-51 (9th Cir. 1996)); *cf. Water West, Inc. v. Entek Corp.,* 788 F.2d 627, 629 (9th Cir. 1986) (claim arising in California but reduced to judgment in Nevada state court "*was merged into the Nevada judgment and . . . extinguished*") (emphasis added). HCB has not yet informed the California court that the question of attorney fees, costs, and interest rests entirely and exclusively with this Court and is subject to the General Rule of Merger, or that the statutory framework that guides this Court on the issue of interest is wholly distinct from California's "10% per annum" interest statute or the "contract rate."[4] What it has represented to that court, however, is that HCB's outstanding interest on the Mississippi judgment exceeds $1 million, when in reality it is far less—$16,796.78.[5]

A skeptical litigant might think that HCB is attempting to play both Courts by securing

---

[4] California Code of Civil Procedure Sec. 685.010(a).

[5] Post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment." 28 U.S.C.S. § 1961. For the week preceding the July 11, 2013 judgment, the post-judgment interest rate was 0.15%. (https://www.txs.uscourts.gov/page/post-judgment-interest-rates-2013).

first the statutory amount of interest allowed by law, then going to California and asking for the difference between that amount and the "10% per annum" or "contract rate" it represents to that court it is entitled to.  For this reason, and because it is clearly prohibited for HCB to do so, Kennedy asks that this Court enter at the proper time an Order clarifying the interest, fees and costs allowed in total on the judgment and making clear to all other courts the preclusive effect of its Order.

Ultimately HCB views the California case as an insurance policy, and the course of conduct it has engaged in reveals its motivations.  There is no reasonable basis to continue to pursue intervention for the purposes stated by HCB.  This context raises serious questions about whether HCB's legal fees for work in California were "reasonable and necessary," or even undertaken in good faith given the clear requirement that fees, costs, and interest are to be determined by this Court, not the California court.  Its Los Angeles counsel, Mr. Anton, appears to have spent almost 105 hours and $37,000 in legal fees to pursue HCB's backstop litigation in California. ECF 449-5 at 2.  If this Court believes, as does Kennedy, that HCB's intervention in California is improper given this Court's jurisdiction, the case law, and the applicable statutes, then the work of all of HCB's attorneys as part of the California case must be itemized, explained, and ultimately deducted from its lodestar fee request.  Unfortunately, the exhibits provided keep Kennedy and this Court from properly evaluating this issue.  Kennedy requests that the Court require HCB to itemize its fees and costs so that all parties may determine what is and is not properly included in the application.

### D. Even HCB agrees that the RICO case is not part of any "collection" effort.

HCB repetitiously vilifies Kennedy and goes to great pains to detail the efforts it has undertaken to pursue her, her related entities, her friends, her lawyers, her business partners, and

her financial advisors. But it says nothing of the elephant in the room: its mammoth Christmas Eve RICO case.

Mr. Cheatham's affidavit [ECF #449-6] seeks compensation for fees from his firm "for the time period March 15, 2013 to February 28, 2019, in connection with the Firm's representation of HCB in the above-referenced matter against Lee F. Kennedy." [ECF #449-6 at ¶2]. The affidavit does not identify whether any of his firm's fees associated with the RICO case are segregated from his undetailed tally of $584,098.41 in attorney fees. Nor does the affidavit explain what an "average rate" is for the 19 billers he lists, or why 11 of those billers are partners in his firm, while only 3 are associates.[6] *Id.* at ¶¶4-5.

Similar deficiencies exist in HCB's Exhibit 7, Mr. Bates' affidavit. Mr. Bates' firm seeks fees for a time period approximately two weeks longer than does Mr. Cheatham's firm, during which it was clear to all that Kennedy was trying to deposit the judgment amount in the registry of this Court. [ECF #449-7 at ¶2]. Because no attorney or paralegal listed on Exhibit 5 describes his or her work, or the timeframe in which it occurred, neither the Court nor Kennedy is able to make an assessment of what portion of their claimed fees should be eliminated. *Id.* at ¶¶4-5.

The RICO case must have been a herculean effort by HCB's lawyers. While Kennedy contests the accuracy of its allegations and conclusions, it is certainly longer than many other prominent works of fiction. At 338 pages and more than 1600 paragraphs it has become the blueprint for the multiple pleadings filed in California and this Court, particularly as a roadmap for all of the one-sided allegations HCB has come to enjoy launching at Kennedy. Any fees and costs associated with the RICO case must be deducted from HCB's lodestar figure.

---

[6] An "average" rate is not defined, but presumably blends time over different years during which billing lawyers' rates escalated. Neither Kennedy nor the Court may accurately assess whether a reasonable fee was charged, and when, without actual billing records and descriptions.

### *E. Other "collection" efforts are plainly unreasonable.*

As previously discussed, HCB has used "collection" and "enforcement" litigation as leverage against Kennedy for matters unrelated to the note and guaranty upon which the judgment was granted. The Memorandum attempts to conceal these true intentions, but they are not so easily camouflaged.

Kennedy specifically challenges an array of attorney activity for which HCB appears to seek reimbursement related to its activities in Florida proceedings. While HCB has identified its high-level efforts in the Florida proceedings, it has not accurately explained those proceedings or why they should be viewed critically by this Court. The efforts undertaken as part of HCB's Florida matters are so far afield from reasonable and necessary fees for "collection or enforcement" that they cannot reasonably be the subject of this Motion. For example, HCB has directed a disproportionately large amount of resources uncovering the origin of a $4,000 payment mistakenly disbursed to her attorneys. HCB has also doggedly pursued contempt charges against profitless entities, and still continues to challenge the trial court's recent order determining the contempt orders void for lack of service. Ex. F.

As for HCB's garnishment action in New York, it alleges that Kennedy "committed a fraud on the court" by indicating that there were social security and child support funds being held at JP Morgan Chase. One of the accounts at JP Morgan Chase does receive funds from the Social Security Administration, representing her minor children's benefits for their deceased father. Kennedy was asked to complete a single form, but was not instructed to file a separate form for each account. That she checked "social security" and "child support" on the form is not evidence of any fraudulent intent. HCB's Motion also insinuates that she committed perjury by not attaching supporting documentation, but the request is for the account-holder's benefit, i.e., so that

16

"your account may be released more quickly."   Failing to submit a document meant for her benefit is not an act of deception.

Despite HCB's attacks against Kennedy, it has not shown that any of these efforts were reasonably aimed at collecting the judgment.   HCB has kept the meter running for far longer than necessary, causing Kennedy and other unrelated third parties to incur their own substantial legal fees.   HCB cannot be allowed to profit from this unnecessary litigation.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Kennedy respectfully prays that this Court will deny HCB's Motion for Attorney Fees and Costs.   Alternatively, Kennedy prays that this Court will order HCB to produce the fee agreements and itemized billing statements, allowing Kennedy 14 days after production to file a supplemental response.   Kennedy further prays for such other relief to which she may be entitled.

This the 29th day of March, 2019.

Respectfully Submitted,

By: */s/ Sage E. Harless*
      SAGE E. HARLESS (MBN 102260)

OF COUNSEL:
JEFFREY M. WILLIAMS (MBN 100410)
SAGE E. HARLESS (MBN 102260)
Hubbard Mitchell Williams & Strain, PLLC
1062 Highland Colony Parkway, Suite 222
Ridgeland, MS 39157
P.O. Box 13309
Jackson, MS 39236
Telephone:   (601) 707-3440
Facsimile:   (601) 898-2726
williams@hubbardmitchell.com
harless@hubbardmitchell.com

## **CERTIFICATE OF SERVICE**

I, Sage E. Harless, as attorney for Lee Kennedy, do hereby certify that I have this day served a true and correct copy of the above and foregoing by ECF Procedures upon all counsel of record.

This the 29th day of March, 2019.

                                                */s/ Sage E. Harless*
                                                SAGE E. HARLESS